UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HDYR, L.L.C.,<br>*Plaintiff,* | § § § § § § § | |
| v. | | CIVIL ACTION NUMBER<br>BY_____ |
| RJ INVESTMENTS INTERNATIONAL, INC.,<br>*Defendant* | | **A10CA655 LY**    JURY |

FILED
2010 SEP -1 PM 2: 24
CLERK US...
WESTERN DIST...  OF TEXAS

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW PLAINTIFF, HDYR, L.L.C., ("HDYR"), and files this its Original Complaint, complaining of DEFENDANT, RJ Investments International, Inc. ("RJ Investments"), and in support thereof would show as follows:

### I. PARTIES

1. Plaintiff is a domestic limited liability company doing business in Texas with its principal headquarters in Austin, Travis County, Texas.

2. Defendant, RJ Investment International, Inc., is a foreign corporation organized under the laws of the State of Ohio, and can be served with process by serving James I. Weprin, at 28 W. 4th Street - #A-7, Cincinnati, Ohio 45202, or 109 N. Main Street, 500 Performance Place, Dayton, Ohio 45402.

### II. JURISDICTION & VENUE

3. This action arises in part under the Lanham Act, Title 15, United States Code, and Texas' common law regarding unfair competition. Subject matter jurisdiction is therefore founded on 28 U.S.C. §§1331 and 1338(a) and (b). For all other causes of action, this Court has subject matter jurisdiction under Title 28, U.S.C. §1367(a), in that those actions are so

F:\Clients\60000\60284.002 Yung, Yuen - soho sushi infringment\ORIGINAL COMPLAINT - jmw.docx - JMW

related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

4. This Court has specific jurisdiction over RJ Investments because HDYR owns a federally registered trademark and is located in Austin, Texas, and injury from that infringement is likely to be and has been caused there.[1] Specifically, confusion is likely to occur among consumers in this district, all as set forth more fully below.[2] Moreover, it is clear that Defendant's personnel visited Austin, Texas, on at least one occasion to observe and document HDYR's operations, all for the purpose of appropriating HDYR's Trade Dress and Trademark; all as set forth more fully below. For these same reasons, venue is proper in this federal district under 28 U.S.C. §1391(a)(1) and (2).

### III. FACTS COMMON TO ALL CAUSES OF ACTION

#### *i. HDYR's Business, Trademark, and Trade Dress.*

5. HDYR operates a chain of sushi restaurants under the trademark "How do you roll?" with two locations in Austin, Texas, and is currently offering franchises throughout the United States, including Ohio. "How do you roll?" is a federally registered trademark, registration number 3,680,128, and was first used in October 2008 ("Trademark").[3] HDYR also owns and maintains a website at the domain www.howdoyouroll.com.

6. HDYR is unique among sushi restaurants. Specifically, it allows customers to order sushi rolls made to customers' specifications, as opposed to traditional sushi restaurants which offer sushi rolls with the ingredients predetermined.

---

[1] *Minnesota Mining and Mfg. Co. v. Rauh Rubber, Inc.*, 943 F.Supp. 1117, 1125 (D.Minn.,1996) (stating "[a] substantial part of the events leading to infringement occurs both in the district where the infringer is located and in the district where the trademark owner is located and confusion is likely to occur."); *see also* **Endless Pools, Inc. v. Wave Tec Pools, Inc.**, 362 F.Supp.2d 578, 586 (E.D.Pa.2005) (finding venue proper in district where trademark injury would be felt).
[2] *Id.*
[3] *See* registration certificate at Exh. D.

7. The experience begins when the customer enters the restaurant and approaches the service counter. Large placards, as well as hand held menus, explain a four step process by which the customer selects ingredients for his sushi roll:

   a) Step 1, "The Wraps" – The customer selects between "traditional seaweed or modern soy wrap."

   b) Step 2, "The Vegetables" – the customer selects among 12 different vegetables.

   c) Step 3, "The Meats" – the customer selects a meat from various types of cooked fish, chicken or beef, or raw fish; and

   d) Step 4, "Our Toppings" – the customer selects a topping from various sauces, spices, and seasonings.

A copy of screenshots from HDYR's website outlining the process, including HDYR's menu, is attached as Exhibit A. This process, including the menu, is duplicated in all material respects on placards in the restaurant.

8. The sushi roll is assembled as the customer advances along the counter, interacting with preparers who ask the customer his preferred ingredients in order of the four menu steps. Once assembled, the sushi roll is served in baskets lined with paper.

9. Part of the experience includes partial preparation of the sushi roll by various machines. For example, one machine applies rice evenly over the customer's choice of wraps. Another machine slices the assembled roll into uniform pieces. These machines are used in a particular order in the process, and are positioned specifically for customers to view their operation.

10. Of course, HDYR's Trademark, "How do you roll?", is a suggestive reference to the process by which customers create their own sushi rolls. HDYR uses variations on the Trademark to market the product – *e.g.* "We want to know . . . how do you roll?" and "[b]ut

what we want to know is . . . how do you roll?" HDYR also has a rewards program named "Frequent Roller", that utilizes a card that is marked or punched each time a customer visits a location. After a certain number of visits, the customer receives free food.

11.     These and other aspects of HDYR's restaurant concept, including, but not limited to the general appearance of the exterior and interior of the restaurant, its green coloration, its signage, kitchen floor plan, decor, menu, coloration, and the equipment used to prepare and serve the food, all constitute HDYR's unique trade dress which distinguishes it from its competitors ("Trade Dress").[4]

### ii. Defendant's Business, and Its Use of HDYR's Trademark and Trade Dress.

12.     Defendant began operation of a sushi restaurant in Cincinnati, Ohio, during roughly November 2009. Defendant's restaurant is identical to HDYR's restaurant in all material respects, including its use of HDYR's Trade Dress and Trademark. For example, Defendant utilizes the same four step process by which customers can create their own sushi roll, all as seen from their menu which is included at Exhibit B. Specifically, customers are instructed, in steps numbered "1" through "4," to choose between a seaweed or soy wrap, and then choose from lists of meats, vegetables, and toppings.

13.     Defendant's restaurant layout is identical. For example, the menu is set forth in similar looking placards above an assembly line styled counter. The customer advances along the counter, interacting with preparers who ask him which ingredients he prefers. Defendant

---

[4] *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117-19 (5th Cir., 1991, aff'd 112 S.Ct. 2753) (affirming district court's instruction to jury that " 'trade dress' is the total image of the business. Taco Cabana's trade dress may include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the decor, the menu, the equipment used to serve food, the servers' uniform and other features reflecting the total image of the restaurant." ); *see also* ***Blue Bell Bio-Medical v. Cin-Bad, Inc.***, 864 F.2d 1253, 1256 (5th Cir.1989) (stating "[t]he 'trade dress' of a product is essentially its total image and overall appearance.")

uses the same equipment positioned in the same places, allowing customers to watch them in operation. And once assembled, the customer's sushi roll is served in the same baskets lined with the same paper. Defendant's website describes the process as a "unique dining concept [which] puts you in charge of your roll. Choose from our list of fresh ingredients and we'll make it exactly how you see fit."[5]

14. Regarding HDYR's Trademark, Defendant uses variations of it on its website, including "[t]hat's how we roll" and "[w]e want to hear how YOU roll."[6] Not only do these duplicate HDYR's Trademark, they duplicate the variations used by HDYR on its website.

15. Defendant has even duplicated HDYR's reward card program, using the same name for the card, "Frequent Roller".

16. Defendant also maintains pages on various social networking internet sites including Facebook and Twitter. On Facebook, Defendant implores its customers to "[l]et us know 'how you roll' when you come into Soho Sushi . . ."[7] On Twitter, it similarly asks customers "how do you roll?"[8] Customers have responded to the questions by describing their experience at Defendant's restaurant, with one stating "[t]hat's how I roll" and another "that's how he rolls."

17. Due to the almost identical duplication of HDYR's Trade Dress and use of HDYR's Trademark, it is clear that Defendant's agents visited one or both of HDYR's existing locations on more than one occasion to study HDYR's operations.

---

[5] See screenshots at Exh. B.
[6] See screenshots at Exh. B.
[7] See screenshots at Exh. C.
[8] Id.

## IV. CAUSES OF ACTION

### A) LANHAM ACT VIOLATIONS.

18. Defendant's use of HDYR's Trade Dress and Trademark is likely to cause confusion or mistake by HDYR's existing and potential customers, as to the HDYR's connection with Defendant, or the origin, sponsorship, or approval of Defendant's business by HDYR. Defendant's use of the Trade Dress and Trademark is also likely to cause similar confusion by HDYR's existing and potential franchisees. In this regard, Defendant's use of HDYR's Trade Dress and Trademark violates 15 U.S.C. §1125(a)(1)(A).[9]

19. As a result of Defendant's infringement, HDYR has suffered damages as measured by potential franchisees who might have purchased a franchise from HDYR, but decided not to because of Defendant's infringement. HDYR seeks recovery of these amounts under 15 U.S.C. §1117(a).[10] Moreover, to the extent the Court finds actual damages inadequate, HDYR seeks an award up to three times the amount of actual damages. Also under §1117(a), HDYR further seeks recovery of Defendant's revenue, or profit if properly established, while using HDYR's Trade Dress and Trademark. And, to the extent these amounts are inadequate, HDYR seeks an award of damages that the Court feels is just given the circumstances of the case.

### B) UNFAIR COMPETITION.

20. Texas common law provides a cause of action for unfair competition based on

---

[9] See *American Rice, Inc. v. Arkansas Rice Growers Co-op. Ass'n*, 532 F.Supp. 1376, 1384 (S.D.Tex., 1982, *aff'd* 701 F.2d 408) (allowing Lanham Act claims for unregistered trade dress infringement).
[10] See *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 242 (S.D.N.Y.,2000, *no writ*) (citing 15 U.S.C. §§ 1117 and 1125 for proposition that damages available under §1117 are available for infringement of both registered and unregistered marks).

infringement of trade dress and trademarks.[11] The elements of such an action "are no different than those under federal trademark law."[12] Therefore, for the same reasons that Defendant has infringed HDYR's Trade Dress and Trademark, it has unfairly competed with HDYR. HDYR seeks recovery of damages suffered thereby, as well as disgorgement of Defendant's profits from use of the Trade Dress and Trademark.

## V. REQUEST FOR INJUNCTIVE RELIEF

### A) RELIEF REQUESTED.

21.   For all requests for injunctive relief, HDYR asks that Defendant be enjoined from further operations until such time that it ceases use of the Trademark or any variation thereon, as well the Trade Dress. Regarding the latter, HDYR specifically asks that Defendant be prohibited from using a multi-step menu from which customers select ingredients for creation of their own sushi roll; that Defendant be enjoined from use of the assembly line style counter by which customers are queried by sushi roll preparers regarding their desired ingredients; and that Defendant be enjoined from using the name "Frequent Roller" or any variation thereon.

### B) REQUEST FOR PERMANENT INJUNCTIVE RELIEF.

#### i. Injunctive Relief Pursuant to 15 U.S.C. §1116.

22.   HDYR seeks a permanent injunction pursuant to 15 U.S.C. §1116, enjoining Defendant as requested above. Injunctive relief is available for registered marks as well as unregistered trade dress.[13] Injunctive relief in a trademark case requires that

> "[1] a party [f]irst . . . must prove that the name he seeks to protect is eligible for protection. [2] He must then prove he is the senior user . . .[3]

---

[11] *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*, 991 S.W.2d 484, 488 (Tex.App.—Ft. Worth 1999, *no pet.*); *see also KLN Steel Products Co., Ltd. v. CNA Ins. Companies*, 278 S.W.3d 429, 440-41 (Tex.App.—San Antonio, 2008 *rev. den'd.*) (applying doctrine to trade dress infringement).
[12] *Id.*
[13] *American Rice, Inc. v. Arkansas Rice Growers Co-op. Ass'n*, 532 F.Supp. 1376, 1384 (S.D.Tex., 1982, *aff'd* 701 F.2d 408)

F:\Clients\60000\60284.002 Yung, Yuen - soho sushi infringment\ORIGINAL COMPLAINT - jmw.docx - JMW

[H]e must then show a likelihood of confusion between his mark and that of the defendant. [4] Finally, . . . he must show that the likelihood of confusion will actually cause him irreparable injury for which there is no adequate legal remedy."[14]

23. HDYR's Trade Dress is eligible for protection. Specifically, HDYR uses the general appearance of the exterior of its restaurant, the identifying signage, the interior kitchen floor plan, the decor, the menu, the equipment used to prepare and serve food, the servers' uniforms and other features reflecting the total image of the restaurant to distinguish itself from others selling sushi, and the restaurant business in general.[15]

24. HDYR's Trademark is eligible for protection. Registration of a mark with the U.S. Patent and Trademark Office constitutes prima facie evidence of the mark's validity and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services.[16] A copy of the registration certificate for the Trademark is attached as Exhibit D.

25. HDYR is the senior user of the Trade Dress and Trademark, having begun use of them by at least October 2008. Defendant has only been in business since November 2009, at the earliest. It is unknown if it began using variations of the Trademark when it began operations, or at a later date.

26. In determining whether a likelihood of confusion exists, courts consider the following, nonexhaustive list of factors:

---

[14] *Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 309-10 (5th Cir. 2008).
[15] See *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117-19 (5th Cir., 1991, aff'd 112 S.Ct. 2753) (affirming district court's instruction to jury in restaurant trade dress infringement case that "'trade dress' is the total image of the business. Taco Cabana's trade dress may include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the decor, the menu, the equipment used to serve food, the servers' uniform and other features reflecting the total image of the restaurant.").
[16] See 15 U.S.C. §§ 1057(b) & 1115(a); *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 194 (5th Cir.1998).

F:\Clients\60000\60284.002 Yung, Yuen - soho sushi infringment\ORIGINAL COMPLAINT - jmw.docx - JMW

"(1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion. No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.' "[17]

27. Applied here, all of these factors support a finding of likelihood of consumer confusion. Defendant's variations on HDYR's Trademark are identical in all material respects to Trademark. Regarding the Trade Dress, Defendant has virtually copied HDYR's entire concept including, but not limited to, the four step process of selecting ingredients, the assembly process, the layout of machinery used in that process, the display placards, and certain colors.[18]

28. HDYR and Defendant's services are identical; both sell sushi from a retail restaurant using the identical restaurant concept – *i.e.* Inexpensive sushi which the customer is able to tailor to his individual tastes.[19] Moreover, although HDYR may not currently have retail customers in Cincinnati, it is in the process of actively franchising its restaurants throughout the United States. Therefore, its current "customers" in Cincinnati are potential franchisees. In this regard, Cincinnati is in HDYR's natural zone of expansion, and therefore "[t]he danger of affiliation or sponsorship confusion increases when the junior user's market is one into which the senior user would naturally expand."[20] Were a franchisee to encounter Defendant's use of the Trademark and Trade Dress, it is likely not to buy a franchise because either (a) it thinks

---

[17] *Paulsson Geophysical Services, Inc.*, 529 F.3d at 310
[18] See *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117-19 (5th Cir., 1991, aff'd 112 S.Ct. 2753) (affirming district court's instruction to jury in restaurant trade dress infringement case that "'trade dress' is the total image of the business. Taco Cabana's trade dress may include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the decor, the menu, the equipment used to serve food, the servers' uniform and other features reflecting the total image of the restaurant."); see also *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984) (allowing protection of color schemes as trade dress).
[19] See *Xtreme Lashes, L.L.C. v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009) (finding the " '[t]he greater the similarity between products and services, the greater the likelihood of consumer confusion' ").
[20] *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 666-67 (5th Cir. 2000).

Defendant's operation is an HDYR franchise and does not wish to compete with a franchise in the same area, (b) it does not wish to compete with Defendant's operation, or (c) it thinks HDYR's restaurant concept and trademark are not unique, or at worst, are copies of Defendant's. The last point creates possible injury throughout the United States, since uniqueness is a primary attraction to the potential franchisee.

29. Defendant and HDYR utilize the identical advertising media, with extensive internet advertising as well as Facebook and Twitter accounts.

30. Due to the almost identical duplication of HDYR's Trade Dress and use of HDYR's Trademark, it is clear that Defendant's agents visited one or both of HDYR's existing locations on more than one occasion to study HDYR's operations. Therefore, it is clear that Defendant intended to appropriate HDYR's Trademark and Trade Dress as its own, despite knowing it was in use already.

31. Defendant's use of HDYR's Trade Dress and Trademark causes irreparable injury to HDYR. Specifically, although it may be possible to establish some of the franchises HDYR does not sell because of Defendant's operation, it is impossible to determine all of them – *i.e.* It is impossible to recreate the reality that would have been, but for Defendant's infringement. Even were HDYR able to do so, and thereby be fully compensated for the infringement, injunctive relief is still available to prevent a multiplicity of suits to recover future damages from the infringement.[21]

32. Moreover, "[w]hen a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services."[22] Applied here, HDYR is

---

[21] *Braniff Airways, Incorporated v. Toren*, 50 B.R. 393, 402 (N.D.Tex. 1984).
[22] *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.*, 83 F.Supp.2d 810, 831 (S.D.Tex.1999).

F:\Clients\60000\60284.002 Yung, Yuen - soho sushi infringment\ORIGINAL COMPLAINT - jmw.docx - JMW

unable to control the quality of Defendant's services. The loss of this ability, combined with the likely and actual confusion created by Defendant's use of HDYR's Trade Dress and Trademark, irreparably harms HDYR.

### ii. Injunction under 15 U.S.C. § 1125(c) and Texas Business and Commerce Code §16.29.

33. HDYR also seeks injunctive relief under 15 U.S.C. §1125(c) and its Texas corollary, Business and Commerce Code §16.29. Specifically, Defendant's use of HDYR's Trade Dress and Trademark creates the likelihood that they will be diluted by blurring and tarnishment.

34. The Trade Dress is famous and distinctive. In particular, HDYR has been using it since at least October 2008, and has served a very large number of customers over that time period. As a result, HDYR's Trade Dress and Trademark is widely recognized.[23]

35. Defendant's use of the Trade Dress and Trademark is likely to dilute its distinctiveness as used by HDYR. In particular, the Trade Dress and variations on the Trademark used by Defendant are very similar, if not identical, to HDYR's Trade Dress and Trademark.[24] The Trade Dress is distinctive in that it has come to identify HDYR's services to the consuming public.[25] Moreover, a Lanham Act dilution claim does not require competition between an infringer and trademark owner, nor even likely or actual confusion between their services.[26]

36. Defendant's use also threatens to tarnish HDYR's Trade Dress and Trademark because Defendant's services are believed to be inferior to HDYR's.[27]

---

[23] See 15 U.S.C. §1125(c)(2)(A) (listing factors for determining if mark is "famous").
[24] See Id. at §1125(c)(2)(B) (listing factors for determining "dilution by blurring").
[25] Id.
[26] See Id. at §1125(c)(1).
[27] See Id. at §1125(c)(2)(C) (defining "dilution by tarnishment").

F:\Clients\60000\60284.002 Yung, Yuen - soho sushi infringement\ORIGINAL COMPLAINT - jmw.docx - JMW

37.     In determining the right to injunctive relief under Texas Business and Commerce Code §16.29 – a/k/a "Texas Anti-Dilution Statute" – courts apply the same analysis used under Lanham Act dilution claims.[28]  Therefore, for the same reasons cited above, HDYR seeks injunctive relief thereunder.

## VI. ATTORNEYS' FEES.

38.     To the extent HDYR is the prevailing party in this suit, either through an award of damages, injunctive relief, or both, they are entitled to attorneys' fees and costs pursuant to 15 U.S.C. §1117(a).[29]  This is an exceptional case, in that Defendant's infringement of the trade dress was malicious, fraudulent, deliberate or willful.  Specifically, due to the almost identical duplication of HDYR's Trade Dress and use of HDYR's Trademark, it is clear that Defendant's agents visited one or both of HDYR's existing locations on one or more occasions to study HDYR's operations.   Therefore, it is clear that Defendant intended to appropriate HDYR's Trademark and Trade Dress as its own, despite knowing it was in use already.

## VII. PRE- AND POSTJUDGMENT INTEREST.

39.     HDYR seeks pre- and postjudgment interest at the rates set forth by law, with prejudgment interest accruing from the date of service of the suit.[30]

## VIII. JURY DEMAND

40.     HDYR demands trial by jury as to this action.

---

[28] *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278-79 (5th Cir. 2002).
[29] See *Audi AG v. D'Amato*, 469 F.3d 534, 550-51 (6th Cir., 2006, *no writ*) (allowing attorneys' fees under §1117(a) to prevailing party awarded damages or injunctive relief).
[30] See *Joy Mfg. Co. v. CGM Valve & Gauge Co., Inc.*, 730 F.Supp. 1387, 1395 (S.D.Tex. 1989) (allowing prejudgment interest from the date pleadings are served until judgment and citing §6621 of Internal Revenue Code for appropriate interest rate); *also see* **Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.**, 874 F.2d 431, 436 (7th Cir. 1989) (allowing prejudgment interest in trademark infringment cases).

F:\Clients\60000\60284.002 Yung, Yuen - soho sushi infringment\ORIGINAL COMPLAINT - jmw.docx - JMW

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer, and that Plaintiff have final judgment for the following:

a) Actual damages;

b) Prejudgment and post-judgment interest as allowed by law;

c) Attorneys' fees and costs of suit; and,

d) Permanent injunctive relief as set forth above.

Respectfully submitted,

_____
JUSTIN M. WELCH
Texas State Bar No.: 24003876
**ATTORNEYS FOR PLAINTIFF**

A member of the Firm of:

**BLAZIER, CHRISTENSEN, BIGELOW & VIRR, P.C.**
Attorneys and Counselors at Law
221 West Sixth Street, Suite 2000
Austin, Texas 78701
512 476 2622
(Fax) 512 476 8685

F:\Clients\60000\60284.002 Yung, Yuen - soho sushi infringment\ORIGINAL COMPLAINT - jmw.docx - JMW